```
              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF LOUISIANA
                    ALEXANDRIA DIVISION


ALAN D. MOCHERMAN                   CIVIL ACTION
     Appellant                      NO. 07-1027

VERSUS


MICHAEL J. ASTRUE                   JUDGE DEE D. DRELL
COMMISSIONER OF SOCIAL SECURITY     MAGISTRATE JUDGE JAMES D. KIRK
     Appellee
```

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Alan D. Mocherman ("Mocherman") filed an application for Supplemental Security Income benefits ("SSI") on or about March 15, 2005 (R. 51-52) alleging an inability to perform relevant or other substantial gainful activity. In his complaint, Mocherman contends he suffers from asthma, gastroesophageal reflux disease, osteoarthritis, chronic lower back pain, headache, chronic fatigue, insomnia, dysphagia, shortness of breath and a seizure disorder which contribute to his inability to engage in substantial gainful employment (Doc. Item 1). The claim was initially denied and Mocherman timely filed a request for a hearing before a Federal Administrative Law Judge ("ALJ")(R.43).

Administrative Law Judge Ronald L. Burton ("ALJ Burton") held a hearing on October 17, 2006. Mocherman, who was represented during the hearing by Nina Coleman, appeared and testified as did his witness, Chris Charrier, and vocational expert, Beverly Prestonback (R. 261-307).

ALJ Burton issued a decision on December 20, 2006 denying benefits (R. 18-24). Mocherman filed a request for review of that decision on February 16, 2007 and his attorney followed that request up with a letter dated March 22, 2007 detailing the reasons for his appeal (R. 5-9, 12). The Appeals Council declined review of the ALJ's decision; thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") (R. 2-4).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the administrative hearing, Mocherman was 46 years old and lived with his mother in Jena, Louisiana (R. 264). He completed high school in 1988 and began working as a machine press operator at Louisiana Pacific. After leaving Louisiana

Pacific, Mocherman held jobs as a telephone technician, knitting machine operator, forklift operator and customer service representative (R. 265-266). He worked as a customer service representative at Wal-Mart until 1999 when he sustained a work related injury to his back (R. 269).

Mocherman testified that he had a history of seizures and though he had not had a grand mal seizure since approximately 2000, he continued to experience petite mal seizures or what he described as a disoriented feeling (R. 268, 274). He further testified that he was regularly seen by a neurologist with Huey P. Long Medical Center every three to four months for seizures and took dilantin daily (R. 285).

Mocherman also suffered from gastroesophogeal reflux disease ("GERD") which he controlled with Nexium, but he still felt stomach discomfort on a daily basis (R. 287). Additionally, he complained of a chronic burning pain in his lower back. He took Motrin to ease the pain, but it did not help. He alternated sitting and standing to moderate the pain, but lying on the floor seemed to work best (R. 287-89). In addition to back pain, Mocherman also complained of chronic pain in his neck and right shoulder (R. 290).

Mocherman also complained that he was unable to hold onto things due to his right shoulder pain, the nodule on his right elbow and the fact that he had numbness in his left hand due to a

severed nerve (R. 290-92). He took Zoloft for depression and used an albuterol inhaler for his asthma (R. 293-294). He complained that one or several of his medications caused him to experience diarrhea, headaches, loss of sight and frequent urination (R. 286). Additionally, he complained of insomnia, loss of attention, and loss of appetite (R. 294).

Mocherman further advised that he did prepare his meals but was not responsible for household chores (R. 296). His hobbies included watching television and using the computer (R. 296).

He advised that he could stand twenty to thirty minutes, sit thirty minutes, walk 100 yards on a good day and 20 yards on a bad one and could not push or pull (R. 296-297).

Mocherman's friend, Chris Charrier, testified that she visited him every weekend and observed the problems he experienced with sitting, standing, walking, lifting and dropping things (R. 299). She witnessed him having petite mal seizures and helped him keep a log of those occurrences (R. 300).

In addition to Chris Charrier, Vocational Expert ("VE"), Beverly Prestonback, testified. She was asked whether a person with a history of seizure disorder would be able to perform any of the positions which Mocherman previously held. She advised that considering positions with seizure precautions already in place (that is no heights, no working around machinery, no vibrations) he would not be able to operate a forklift or a knitting machine due

to hazard (R. 271). However, Mocherman would be able to perform his work as a customer service representative, as generally performed, as long as he did not stock top shelves. The VE further advised that a person with high school education and a seizure history would also be suited to perform light or sedentary work as a stock clerk, order filler, general office clerk or information clerk (R. 271-272).

ALJ Burton found Mocherman had not engaged in substantial gainful activity since October 23, 2003 (the date of the final determination denying SSI benefits on a prior application filed by Mocherman). Though the ALJ found Mocherman's seizure disorder, asthma, and degenerative changes of his back and right shoulder to be severe impairments, he did not find any of these impairments, either alone or in combination, met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Mocherman was found to have the residual functional capacity ("RFC") to perform light work that did not require him to work around hazards and was capable of performing past relevant work as a customer service representative as it did not require the performance of work related activities precluded by the claimants residual functional capacity (R. 16-24). Accordingly, the ALJ determined that Mocherman had not been under a disability since March 15, 2005, when he filed his application for SSI (R. 24).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not

supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

                                ISSUES

Mocherman raised the following issues for appellate review:

1. The Commissioner erred by not finding that Mocherman suffers from an impairment or combination of impairments which meet or equal a listing under the Social Security Act;

2. The Commissioner erred in interpreting the testimony of the vocational examiner; and

3. The Commissioner erred by failing to request the presence of a medical expert at Mocherman's hearing.

<u>Mocherman's Impairments</u>

Mocherman claims that he suffers from an impairment or combination of impairments which meet or equal listing(s) 1.02, 1.04, 11.03, 12.04 and/or 14.09. Mocherman lists his impairments as asthma, GERD, osteoarthritis, chronic lower back pain, depression and seizure disorder (Doc. Item 8, p.2).

Listing 1.02 provides that major dysfunction of a joint(s) (due to any cause) is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of

-7-

> the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Mocherman contends he meets part B of the listing because his right shoulder, right elbow and left hand cause him trouble with fine and gross manipulation. He further contends that part A of the listing is met due to his degenerative joint disease, osteoarthritis, back, knee, shoulder, elbow, neck, ankle and hip pain.

The medical records do not indicate Mocherman has a gross anatomical deformity, the first of the requirements for this listing. Accordingly, he cannot meet Listing 1.02. However, even though there is no need to further analyze, it is worth noting that Mocherman's reliance upon the statements made by Robyn Ray, R.N.,C-FNP ("Ray"), a nurse practitioner, that he has fine manipulation and ambulatory problems (R. 239-247) is misplaced. This evidence was properly discounted by the ALJ who determined that a nurse practitioner is not an "acceptable medical source." This is made clear in Social Security Ruling 06-03p which Mocherman relies upon to support his claim that Ray's opinion should have been given

significant weight.

While Mocherman is correct in arguing that a nurse practitioner's medical opinion should be considered an "other source", he fails to recognize that when considering medical opinions, including those from "other sources", an ALJ must look at: (1) how long the source has known and how often he has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual(s) impairment; and (5) any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939 at p 4-5. In advising that he gave Ray's opinion no weight, the ALJ evaluated the aforementioned factors, stated that Ray was not an "acceptable medical source" and set forth various instances of how her opinion was internally inconsistent and not supported by objective testing. Additionally, Ray's report is clear that she saw Mocherman on only two occasions. Accordingly, the ALJ properly rejected Ray's opinion.

The ALJ relied upon the medical opinion of the "acceptable medical source", Dr. Riaz Masud Chaundhry ("Dr. Chaundhry"), who advised that Mocherman's statements regarding his limitations were partially credible; he had no manipulative limitations and any limitations on climbing, balancing, stooping, kneeling, crouching

or crawling were associated with his seizure disorder (R. 180-183). Accordingly, Mocherman does not experience limitations as to fine or gross manipulations, another requirement of this listing. Accordingly, Listing 1.02 is not met.

Mocherman also contends that his impairment(s) meet or equal Listing 1.04 which requires one to have a spine disorder such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of the nerve root or the spinal cord and:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Mocherman contends that he meets this listing because he has been diagnosed with spondylolisthesis and spondylosis, disc wedging and

degenerative disc changes and has limitations with motion and weakness. However, the medical evidence lacks a diagnosis of nerve root compression, spinal arachnoiditis or spinal stenosis. Further, as stated previously, his reliance upon Ray's opinion regarding his limited motion and weakness is misplaced as it was properly rejected by the ALJ.

Dr. Chaudhry's report does not indicate that Mocherman's range of motion is outside of an acceptable range or that he experiences any weakness. In fact, the only comment made by Dr. Chaudhry in his summary about Mocherman's back pain is that his "subjective complaints of low back pain" may limit his ability to obtain a heavy labor position. Accordingly, substantial evidence supports the ALJ's finding that Mocherman does not meet Listing 1.04.

Listing 11.03 deals with Epilepsy and states that in order to meet the listing, one must have:

> nonconvulsive epilepsy (petit mal, psychomotor or focal, documented by detailed description of typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Mocherman provided a log of the dates and times he experienced petit mal seizures. However, this log does not contain a detailed description of those seizures. Additionally, he was seen at Huey P. Long Medical Center at least once a quarter to evaluate his seizure disorder, but there is no notation, much less a detailed

-11-

description, in those records of reoccurring petit mal seizures. Accordingly, Mocherman does not meet Listing 11.03.

Mocherman also contend that he meets listing for affective disorders, specifically Listing 12.04(A)(B)(1)(2) and (3) because he is depressed, has memory loss, fatigue, difficulty concentrating and "limited" ability to perform daily activities and "limited" social function. In order to meet this listing, Mocherman would have to show that he has a disturbance of mood, accompanied by a full or partial manic or depressive syndrome and he would have to meet the criteria set forth in sections A and B.

To meet the part A criteria, Mocherman would have to show that he suffers from a depressive syndrome accompanied by at least four of the following: pervasive loss of interest in almost all activities, appetite disturbance/weight change, sleep disturbance, psychomotor agitation or retardation, decreased energy, feeling of guilt or worthlessness, difficulty concentrating or thinking or thoughts of suicide. Of these, the only ones which Mocherman self reports are weight change, sleep disturbance, and difficulty concentrating or thinking.

Even if one were to assume that decreased energy applied to him, Mocherman would still not meet the criteria of part B as he has not shown "marked restrictions" of either daily living, social function or in maintaining concentration, persistence or pace. Mocherman's own argument is that his daily living and social

function are "limited" and the only evidence supporting this limitation was his own testimony that he had trouble buttoning his pants or shirt.  Thus, there is nothing to suggest that he has a "marked" limitation in daily living, social function.  Furthermore, the medical evidence shows that Mocherman's depression is controlled with Zoloft.  Therefore, Mocherman does not meet the listing for affective disorders.

Finally, Mocherman contends he meets Listing 14.09(A) and/or 14.09(B)(1) and (2) due to the combined impact of his impairments. Listing 14.09(A) provides for persistent inflammation or persistent deformity of: (1) one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6) or (2) one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 1400C7).  Additionally, Listing 14.09 (B)(1) and (2) provides for inflammation or deformity in one or more major peripheral joints with (1) involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

 Neither Dr. Chaudhry's report nor Mocherman's Residual Functional Capacity Assessment indicate that Mocherman is unable to ambulate effectively or unable to perform gross and fine movements

without limitations.[1] Additionally, Mocherman's medical records do not show that he suffers from ankylosing spondylitis or any other an autoimmune disorder.  Accordingly, he does not meet the above listings for immune system disorders.

Vocational Expert Testimony

Mocherman argues that the ALJ improperly determined that he could perform his past relevant work as a customer service representative.  The determination of whether Mocherman can perform his past relevant work rests on descriptions of past work as actually performed or as generally performed in the national economy.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990), citing Jones v. Bowen, 829 F.2d 524, 527 n.2 (5th Cir. 1987).  "The mere inability of a claimant to perform certain 'requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations.'" Leggett v. Chater, 67, F.3d 558, 564 (5th Cir. 1995), citing Jones, 829 F.2d at 527 n.2.

The ALJ compared Mocherman's RFC with the physical and mental demands of his past work and found that Mocherman could perform the job as actually and generally performed.  He relied upon the VE's

---

[1] Listing 14.00(B)(6)(c) states: "[i]nability to ambulate effectively is implicit in 14.09B. Even though individuals who demonstrate the findings of 14.09B will not ordinarily require bilateral upper limb assistance, the required ankylosis of the cervical or dosolumbar spine will result in an extreme loss of the ability to see ahead, above, and to the side."

testimony that the work is considered light semi-skilled work and that the needs for seizure precautions do not preclude this work as it is generally performed in the national economy (R. 271). Additionally, the ALJ noted that Mocherman performed this very work for two years despite his history of seizure.

There is nothing in the record which indicates that Mocherman could not work as a customer service representative. While Mocherman's attorney confirmed with the VE that she considered jobs for a person with a highschool education and, more importantly, a history of seizures, she failed to probe further as to whether Mocherman could really perform this work and/or whether such work should be characterized under a different occupational title.

Accordingly, as substantial evidence supports the ALJ's determination that Mocherman can perform his past work.

Medical Expert

Mocherman's final contention is that the ALJ erred by failing to request the presence of a medical expert at Mocherman's hearing to assist him with determining whether his impairments or combination thereof meet or equal a listing. The claimant has the burden of proof in establishing a disability and Mocherman acknowledges the ALJ has the discretion to order a consultative examination. An examination at government expense is not required unless the record establishes that such an examination is necessary

to enable the ALJ to make the disability decision.  Anderson v. Bowen, 887 F.2d 639, 634 (5th Cir. 1989).  Also, Brock v. Chater, 84 F.3d 726 (5th Cir. 1996); Wren v. Sullivan, 925 F.2d 123, 1287 (5th Cir. 1991); Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989).

In the case at bar, the ALJ reviewed the record and discussed why Mocherman's impairments did not meet the listings.  I have reviewed his determination and found that it is proper. Additionally, if Mocherman had wanted a medical expert to testify, he could have called one to testify.  Therefore, as there is nothing to indicate that a medical expert was needed or would have reached a different decision.  Substantial evidence supports the decision not to call a medical expert.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Mocherman's appeal be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof.  A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 8th day of April, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE